IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID WILSON,                           )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          1:20CV562
                                        )
KILOLO KIJAKAZI,                        )
Acting Commissioner of Social Security,[1]  )
                                        )
                    Defendant.          )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David Wilson ("Plaintiff") brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on November 23, 2016, alleging

a disability onset date of July 29, 2016 in both applications. (Tr. at 10, 266-78.)[2] His

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul
as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this
suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #13].

applications were denied initially (Tr. at 82-113, 148-56) and upon reconsideration (Tr. at 114-47, 162-79). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 180-81.) On March 27, 2019, Plaintiff, along with his attorney, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 10.) Petitioner and his attorney attended a supplemental hearing with the ALJ on June 6, 2019, with regard to expert medical opinions obtained by the ALJ after the initial hearing. (Tr. at 74-81, 1351-1402.) Following the supplemental hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 23), and, on April 23, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

2

(quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." <u>Hancock</u>, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

_____

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to

Case 1:20-cv-00562-TDS-JEP   Document 27   Filed 02/14/22   Page 3 of 21

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Lumbar discogenic and degenerative disc disease with left radiculopathy; tibialis anterior myofasciitis; diabetes mellitus; obesity; chronic obstructive pulmonary disease (COPD); bipolar/depressive disorder; anxiety disorder; antisocial personality disorder; and obesity[.]

---

hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 13) (internal citations omitted). The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following additional limitations:

> [Plaintiff] could sit six of eight hours, two hours at a time; he could stand/walk six of eight hours, two hours at a time. [Plaintiff] could occasionally operate foot controls. He could occasionally climb ramps/stairs, balance and stoop. He should avoid work on ladders/scaffolds; he should not kneel, crouch, or crawl. [Plaintiff] could occasionally work with moving mechanical parts, operate a motor vehicle, and tolerate humidity and wetness, pulmonary irritants, dusts, odors, and fumes, and extremes of heat/cold. He could frequently tolerate vibration. [Plaintiff] could work in loud (heavy traffic) noise (Ex. 26F). Secondary to mental impairments, [Plaintiff] could understand, remember, and carryout instructions for routine, repetitive type unskilled work. He could sustain attention and concentration for two-hour segments of time in an eight-hour day. [Plaintiff] could perform task-related, work-oriented contact with supervisors and coworkers; he could interact with the general public for brief and superficial interactions. He could adapt to changes in the work setting for routine, repetitive type unskilled work (Ex. 27F). [Plaintiff] should not have to perform fast pace high production goal work.

(Tr. at 15.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 21.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 21-23.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 23.)

Plaintiff now challenges the ALJ's assignment of "limited weight" to the medical opinion rendered by Plaintiff's treating psychiatrist, Dr. Lee A. Smith, who was a Resident at the UNC Department of Psychology (Tr. at 18, 618) and who treated Plaintiff under the supervision of various Attending Physicians from August 2017 to June 2019. On January 8,

2019, Dr. Smith completed a two-page, check-box medical source statement provided by Plaintiff's attorney. (Tr. at 1249-51.) When asked whether Plaintiff's impairment affected his ability to understand, remember, and carry out instructions, Dr. Smith indicated that Plaintiff's "anxiety, depression, [and] OCD-like symptoms" would slightly impair his ability to understand, remember, and carry out short, simple instructions. (Tr. at 1250.) Dr. Smith further indicated that Plaintiff would experience moderate or occasional difficulties in his ability to understand and remember detailed instructions and in his ability to make simple work-related decisions, and that Plaintiff would experience marked or frequent difficulties in his ability to carry out detailed instructions. (Tr. at 1250.) Dr. Smith next evaluated Plaintiff's social abilities and found marked or extreme limitations in all areas. Specifically, he posited that Plaintiff would experience marked or frequent problems interacting appropriately with supervisors and co-workers and responding appropriately to changes in a routine work setting, and that he would encounter extreme or constant difficulties interacting appropriately with the public and responding appropriately to work pressures. (Tr. at 1251.) Dr. Smith included a note that Plaintiff "has been in ongoing treatment for these problems, has never missed an appointment, and is working to address these disabling problems. He deserves our society's support in this." (Tr. at 1251.)

The ALJ recounted Dr. Smith's opinions in her decision, and ultimately found as follows:

> Dr. Smith's assessment is given limited weight to the extent of work precluding limitations. The undersigned has carefully considered the psychiatrist's opinions, including other progress notes. In July 2017, Dr. Smith recommended having a social security hearing as soon as possible to prevent [Plaintiff's] decompensation due to waiting (Ex. 14F). Various reports including in September 2017 [noted that Plaintiff] did not have symptoms of OCD to the

7

point of needing treatment (Ex. 11F/9). Notably, the mental health progress notes of record indicated approximately monthly follow-ups for conservative care and many unremarkable mental status findings (Ex. 16F; 18F). [Plaintiff] was to abstain from illicit substances and take medication as prescribed, which would not preclude[] working. Some records refer to discouragement with his former employer and denial of worker's compensation (Ex. 16F/76). [Plaintiff] conceded he needed to increase his physical activity to help [with] his functioning, which Dr. [Smith] also encouraged, including in April 2018. Mental status examination noted [Plaintiff] had some anxiety and depression, but he was well oriented and able to concentrate, with intact memory, with no evidence of hallucinations or response to internal stimuli (Ex. 16F/388). The [RFC] is based on the opinion of the medical expert Dr. Steiner, Ph.D., who noted "very little evidence" to support [Dr. Smith's] ratings (Ex. 27F/6). The medical expert was able to review all the record evidence (Ex. 27F).

At the supplemental hearing, [Plaintiff's] representative objected to the opinions of Dr. Steiner. This included that the medical expert should have fully considered Dr. Smith's assessment (Ex. 17F). Dr. Smith extensively treated and evaluated [Plaintiff] and found he had a PHQ-9 (Patient Health Questionnaire) depression score of 23 (Ex. 16F). While Dr. Steiner found a report where [Plaintiff] was well groomed, other progress notes all indicated [that Plaintiff] was disheveled (Ex. 16F; 18F). The representative's contentions are not determinative.

The undersigned has carefully considered the record evidence. [Plaintiff] was noted as disheveled including December 2017 to June 2018 to February 2019 (Ex. 16F; 18F). Risk assessments included [that Plaintiff] was at [a] chronic elevated risk of self harm/suicide for factors including current substance abuse, though he did not warrant inpatient psychiatric care (Ex. 16F/100). Stressors included finances, worker's compensation and disability (Ex. 16F/100, 102, 104; Ex. 18F/41, 59, 68). For example in January and March 2018, patient instructions included to refrain from using illicit substances (Ex. 16F/155, 353). [Plaintiff] was noted by Dr. Smith to have severe depression, including in June 2018 with a PHQ-9 score of 26 (i.e., Ex. 16F/502). This documentation was reviewed by the medical expert, Dr. Steiner (Ex. 27F/2, 3). No evidence indicates a mental impairment prevents treatment. [Plaintiff] has not been hospitalized for mental health issues. He was to remember to take medications as prescribed, using an alarm if needed (Ex. 16F/151). Follow up continued for conservative care with medications about every three weeks (Ex. 16F; 18F), which is inconsistent with disabling impairments.

As mentioned, Dr. Steiner, Ph.D., medical expert, evaluated the record evidence and provided a Mental Statement of Ability to Do Work-Related Activities. [Plaintiff] "is able to understand, retain, and follow instructions; he can perform

[simple routine repetitive tasks]" (Ex. 27F/6). He has moderate to marked limitation for complex work; he has moderate limitation to interact with others and respond appropriately to usual work situations and to changes in a routine work setting (Ex. 27F8-9). This information is incorporated in the residual functional capacity.

The opinion of Dr. Steiner, Ph.D., is based on a longitudinal review of the record evidence (Ex. 27F). [Plaintiff's] mental impairment(s) do not prevent working in competitive employment for a range of unskilled work involving limited contact with others. Dr. Steiner is a Clinical Psychologist, working as a supervisor and seeing patients in private practice. He provides psychological testing, staff consultation, supervises and trains graduate psychology students, and performs ethics guidance for the psychology practice. Dr. Steiner is familiar with the application of social security disability regulations. He is recognized as a medical expert by the Commissioner of Social Security and his opinion is given great weight (Ex. 24F).

(Tr. at 18-19.)

Plaintiff contends that the above rejection of Dr. Smith's treating physician opinion is contrary to recent guidance from the Court of Appeals for the Fourth Circuit. For claims like Plaintiff's that are filed before March 24, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to her, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Id. (quoting 20 C.F.R. § 404.1527(c)(1)). And, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source

as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with other substantial evidence in [the] case record," it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[5] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. However, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

---

[5] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

10

Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [her] ... decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); Arakas v. Comm'r Soc. Sec., 983 F.3d 83, 107 (4th Cir. 2020) ("[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence." (quotation omitted); Dowling v. Comm'r Soc. Sec., 986 F.3d 377, 385 (4th Cir. 2021) ("While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion.").

Here, Plaintiff argues that "[t]he reasons provided by the ALJ for rejecting Dr. Smith's treating psychiatry are not supported by substantial evidence." (Pl.'s Br. [Doc. #18] at 6.) In particular, Plaintiff contends that the ALJ failed to properly analyze the relevant factors set out in the regulations, including "Dr. Smith's extended treatment relationship with [Plaintiff] as a provider specializing in psychiatry, the frequency of the examination (approximately every three weeks), or the support for his opinion in his notes documenting [Plaintiff]'s ongoing

11

treatment for longstanding mental conditions with persistent symptoms and intermittent medication effectiveness." (Pl.'s Br. at 9) (citing Tr. at 16, 1051, 1089, 1091, 1119, 1121, 1169, 1196, 1257, 1274, 1292, 1301, 1310, 1319). Plaintiff further asserts that, although "the ALJ stated progress notes did not indicate overt concern, . . . she did not explain this statement" or reconcile it with Plaintiff's "need for multiple psychiatric medications and therapy as well as frequent medication changes." (Pl.'s Br. at 9.) Overall, Plaintiff argues that the ALJ "substituted h[er] own lay opinion for a medical expert's when evaluating the significance of clinical findings." (Pl.'s Br. at 9.)

However, in the very next sentence of his brief, Plaintiff further contends that the ALJ erred in rejecting Dr. Smith's opinion in favor of opinion evidence from Dr. Joseph Steiner, Ph.D., LISW-S, who Plaintiff characterizes as a "non-examining record reviewer." (Pl.'s Br. at 10.) In fact, as clearly set out in the administrative decision, Dr. Steiner served as a medical expert in this case. (Tr. at 19.) Plaintiff eventually acknowledges this fact, but, citing Brown, 873 F.3d at 268, argues that the ALJ nevertheless "erred in relying on the theory that Dr. Steiner had reviewed the administrative record and thereby . . . somehow had greater knowledge of the longitudinal medical and mental [health] evidence that [Plaintiff's] treating psychiatrist." (Pl.'s Br. at 11.)

Plaintiff is correct that, in Brown, "the ALJ's analysis 'effectively turned the treating physician rule on its head, deferring to a physician who had never laid eyes on Brown while dismissing the opinions of those who had examined and treated him dozens of times over many years.'" 873 F.3d at 268 (citations and alterations omitted). The Fourth Circuit determined that the ALJ in that case erroneously relied upon the testimony of the medical

expert, Dr. Jonas, as the sole basis for refuting the well-supported opinions of Plaintiff's treating physician as well as the bulk of the record evidence. Notably, the crux of the <u>Brown</u> determination was the lack of substantial evidence to support the opinions of Dr. Jonas or the RFC based upon them. In contrast, in cases where the opinions of non-examining medical consultants or medical experts are consistent with the record as a whole, an ALJ is entitled to rely upon them. <u>See, e.g.</u>, <u>Smith v. Schweiker</u>, 795 F.2d 343, 346 (4th Cir. 1986); <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235 (4th Cir. 1984). This remains true even when the medical expert's opinion contradicts that of a treating physician, because, in such cases, the treating physician's opinion lacks the two most critical factors identified in 20 C.F.R. § 404.1527(c): consistency and supportability. <u>Id.</u>

Here, as set out above, the ALJ's treating physician analysis relied, not only on the opinions of the medical expert, Dr. Steiner, but also upon all of the factors relevant to a treating physician analysis. For example, contrary to Plaintiff's assertion, the ALJ specifically acknowledged that Dr. Smith was Plaintiff's longtime treating psychiatrist and that he treated Plaintiff every three to four weeks throughout the time period at issue. (Tr. at 16) (identifying Dr. Smith as Plaintiff's "longtime psychiatrist"); (Tr. at 17) (noting that Plaintiff "received monthly counseling therapy and medications, with Dr. Smith, M.D."); (Tr. at 18) (noting that Dr. Smith's records reflected "monthly follow-ups for conservative care"); (Tr. at 19) ("Dr. Smith extensively treated and evaluated" Plaintiff). The ALJ further determined that Plaintiff's mental impairments, including bipolar/depressive disorder, anxiety disorder, and antisocial personality disorder, were severe impairments which required ongoing treatment and impacted his ability to perform daily work activities. (Tr. at 13, 20.) She also expressly considered

13

Plaintiff's non-severe impairments, including OCD-like symptoms and a possible substance use disorder, and their impact on Plaintiff's RFC. (Tr. at 13, 20.) However, the ALJ ultimately concluded that Plaintiff's "severe and non-severe mental impairments, alone and in combination[,] would not preclude working." (Tr. at 20.)

In reaching this conclusion, the ALJ explained that Dr. Smith's own progress notes contain "many unremarkable mental status findings" which did not support the stringent limitations he opined. (Tr. at 18.) These included mental status examinations in which Dr. Smith noted that Plaintiff "had some anxiety and depression, but he was well oriented and able to concentrate, with intact memory, [and] no evidence of hallucinations or response to internal stimuli." (Tr. at 19 (citing Tr. at 1091).) The ALJ also noted that records reflected conservative treatment, that Plaintiff was encouraged in counseling to increase activity, that he worked on cars as a hobby and assisted with work at the mobile home lot where he lived, that he had begun to socialize more and had even resumed dating. (Tr. at 17.) In this regard, Dr. Smith's progress notes reflect that Plaintiff came for an initial evaluation in August 2017, with depression that had recently worsened, and Dr. Smith started him on medication. (Tr. at 618-20.) When Plaintiff returned the next month in September 2017, Dr. Smith noted a significant improvement in his symptoms (Tr. at 625), and at his next visit a few months later in December 2017 his evaluation reflects only mild depression (Tr. at 789) and Plaintiff reported that he was able to "leave the house and do stuff" (Tr. at 779). Plaintiff experienced an increasing of his symptoms in the spring, with severe depression in March and April 2018 around the time of the denial of his Worker's Compensation claim. (Tr. at 18, 19, 985, 1061, 1091, 1121, 1181, 1205). However, Dr. Smith's records reflect that while still severe, Plaintiff's

14

symptoms were getting "better" in May and June 2019 (Tr. at 1169, 1196), and by July and August 2018, Dr. Smith's records reflect that while Plaintiff still struggled, he was getting out of the house more including social activities with friends and trips with his mother (Tr. at 17, 1257, 1274).[6] Dr. Smith's record for the next visit in October 2018 reflect that Plaintiff met someone on a dating app and had gone on a date. (Tr. at 17, 1292). Records from November 2018 and early 2019 reflect continued anxiety and difficulties getting out of the house, but also reflect that he was working on projects for friends. (Tr. at 17, 1301, 1310, 1319). These records support the ALJ's findings and conclusion. The ALJ also cited other treatment records from Plaintiff's other providers, including his prior mental health provider, reflecting that Plaintiff was cooperative, pleasant, personable, and friendly. (Tr. at 14); (Tr. at 428, 592, 696, 701.) In addition, the ALJ noted that Dr. Smith's progress notes do not reflect "overt concern" (Tr. at 17-18), given the conservative treatment with medication management and the repeated notations that Plaintiff's OCD-like symptoms do not warrant intervention, that "there is no acute risk for suicide or violence" and that "he "does not currently require acute inpatient psychiatric care." (Tr at 619, 625, 802-03, 1118-19, 1193-94, 1254.) Moreover, as noted above, the ALJ further relied on the expert analysis by Dr. Steiner, who found after reviewing all of the records that there was "very little evidence" to support Dr. Smith's opinion. (Tr. at 19, 1401.)

In light of the lack of support with the record as a whole, the ALJ ultimately deviated from Dr. Smith's findings as set out above. For instance, although Dr. Smith opined that

---

[6] In this time frame, records from other providers similarly reflect that he was going out to dinner, sometimes once a week and sometimes 4-5 times per week, depending on how he was feeling (Tr. at 682), and had helped a friend move recently (Tr. at 671).

Plaintiff would experience marked to extreme limitations in terms of social interaction, the ALJ ultimately determined that Plaintiff had no more than a moderate limitation in this area. Specifically, the ALJ explained that, "[w]hile [Plaintiff] testified that he seldom leaves home, he [was] noted to associate . . . out of the house with friends," and was cooperative during examinations. (Tr. at 14.) This determination is consistent with the findings of the State agency psychological consultants, the medical expert, and the consultative examiner, none of whom opined that Plaintiff required greater limitations than those set out in the administrative decision. (Tr. at 15, 93, 142, 592-93.) In fact, neither the consultative examiner nor the State agency psychological examiner at the initial level opined that Plaintiff required any restrictions in his interaction with others. (See Tr. at 108, 593.) The ALJ considered these opinions, but in light of Plaintiff's history of anxiety, depression, and agoraphobia, along with his treatment for these impairments, determined that Plaintiff required social limitations. (Tr. at 18-19.) At the other end of the spectrum, Dr. Smith posited that Plaintiff would experience extreme or constant difficulty interacting appropriately with the public and responding appropriately to work pressures and would experience marked or frequent problems interacting appropriately with supervisors and coworkers and responding to changes in a routine work setting. (Tr. at 1251.) In support of these assertions, Dr. Smith cited Plaintiff's diagnoses, but, as noted above and in the administrative decision, nothing in the provider's notes or opinion ties these stringent limitations to any clinical findings. (Tr. at 18-19, 1251.) Accordingly, the ALJ relied on the opinions of the medical expert, Dr. Steiner, and the State agency psychological consultant on reconsideration, Richard Cyr-McMillon, Ph.D., both of whom opined that Plaintiff had no more than moderate limitations interacting with others. (Tr. at 18, 142, 1404.)

16

In particular, the RFC mirrors the findings of Dr. Cyr-McMillon, who found that Plaintiff "may have some social interaction limitations but can accept direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact." (Tr. at 15, 142.) Plaintiff points to no evidence other than Dr. Smith's conclusory opinion which suggests a need for greater limitations.

In addition to supporting a lesser degree of impairment in Plaintiff's ability to interact with others than suggested by Dr. Smith, the record as a whole supports the ALJ's RFC assessment regarding Plaintiff's restrictions in his abilities to understand, remember, and apply information, concentrate, persist, and maintain pace, and adapt and manage himself. With regard to understanding, remembering, and applying information, the ALJ noted that Plaintiff had an average IQ and no cognitive impairment. (Tr. at 14.) With regard to adapting and managing himself, the ALJ acknowledged that Plaintiff "appeared disheveled in most psychological treatment notes," had past struggles with substance abuse, and alleged that his "physical pain interfered with functioning." (Tr. at 14.) However, in finding that Plaintiff's limitations in this area were no more than mild, she further recounted Plaintiff's testimony that he performed some cleaning and cooking and was able to perform car reupholstery work at his home. (Tr. at 14.) The ALJ further determined that Plaintiff had no limitation in his ability to concentrate, persist, and maintain pace. (Tr. at 14.) Nevertheless, giving Plaintiff the benefit of the doubt, the ALJ ultimately including RFC limitations relating to all four of the above functional areas. (Tr. at 15.)

17

For example, despite finding that Plaintiff had only mild limitations in understanding, remembering, or applying information, the ALJ limited Plaintiff to understanding, remembering, and carrying out instructions for routine, repetitive-type unskilled work. (Tr. at 15.) Similarly, despite finding no limitation in terms of concentration, persistence, or pace, the ALJ limited Plaintiff to jobs that required him to sustain attention and concentration for no more than two-hour segments of time in an eight-hour day and precluded him from performing fast-paced or high production work. (Tr. at 15.) She further found that Plaintiff's moderate limitation in interacting with others restricted him to task-related, work-oriented contact with supervisors and coworkers and only brief and superficial interactions with the general public. (Tr. at 15.) Finally, the ALJ determined that Plaintiff's mild limitation in adapting and managing himself did not preclude him from adapting to changes in the work setting for routine, repetitive-type unskilled work. (Tr. at 15.) The ALJ specifically noted that she included these additional limitations that were "claimant favorable" based on the medical expert's opinion (Tr. at 20).

More importantly for purposes of Plaintiff's current challenge, none of the restrictions included in the RFC assessment, other than the social limitation discussed above, conflict with Dr. Smith's opinion evidence. Dr. Smith posited that Plaintiff would have only slight difficulty understanding, remembering, and carrying out short, simple instructions; moderate or occasional difficulty understanding and remembering detailed instructions; moderate or occasional difficulties making judgments on simple work-related decisions; and marked or frequent problems carrying out detailed instructions. (Tr. at 1250.) These findings are consistent with the ALJ's determination that Plaintiff could understand, remember, and carry

18

out routine, repetitive-type unskilled work and adapt to changes in the work setting for routine, repetitive-type unskilled work. (Tr. at 15.) Moreover, the ALJ included additional, stringent mental RFC limitations beyond those opined by Dr. Smith, relying on the opinions of both Dr. Steiner and Dr. Cyr-McMillon.

As a final matter, the Court notes that Plaintiff objected to Dr. Steiner's opinions at his supplemental hearing, and the ALJ specifically addressed those objections both during the hearing and in the administrative decision. (Tr. at 19, 79-81.) In particular, the ALJ acknowledged the results of a Patient Health Questionnaire on which Plaintiff's scores indicated severe depression. (Tr. at 80.) Plaintiff's counsel argued that this score supports Dr. Smith's Medical Source Statement, which Dr. Steiner characterized as supported by "very little evidence." (Tr. at 19, 1401.) However, the ALJ fully considered the evidence as a whole, as discussed above, in reaching her conclusion regarding the Dr. Smith's opinion. Moreover, as noted by the ALJ, nothing in Dr. Smith's statement, treatment notes, or elsewhere in the record connects Plaintiff's depression, severe or otherwise, to the need for more extreme social limitations.

Overall, the ALJ evaluated and weighed Dr. Smith's opinions using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) other factors that may support or contradict the opinion. These factors properly included the opinions of the medical expert, the other opinions of record, and the record as a whole. Plaintiff essentially disagrees with the

19

ALJ's analysis and ask the Court to re-weigh the evidence. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, but rather whether the ALJ's determination is supported by substantial evidence. As recently noted by the Supreme Court in Biestek v. Berryhill, 139 S. Ct. 1148 (2019), "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . .It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" In this case, because substantial evidence supports both the ALJ's treatment of Dr. Smith's opinion and the RFC assessment, the Court finds no basis for remand.[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the

---

[7] The Court notes that Plaintiff filed a Suggestion of Subsequently Decided Authority [Doc. #26] citing Collins v. Yellen, 141 S. Ct. 1761 (2021) and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S. Ct. 2183 (2020), as well as a Memorandum Opinion for the Deputy Counsel to the President on the Constitutionality of the Commissioner of Social Security's Tenure Protection. However, these cases do not relate to any of the claims actually raised in this case. Therefore, the filing is not proper under Local Rule 7.3(i) and is STRICKEN. To the extent it may be an attempt to raise a new claim, it is contrary to the Court's Order and Notice [Doc. #14] requiring claims to be raised by motion filed by March 22, 2021.

Commissioner [Doc. #17] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #21] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 14th day of February, 2022.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
